UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CONN-SELMER INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:07-CV-100 CAN |
| | ) | |
| DENNIS BAMBER, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On July 6, 2007, Plaintiff Conn-Selmer Inc. (Conn-Selmer) and third party Defendant Steinway Musical Instruments, Inc. (Steinway) filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On July 24, 2007, Defendant Dennis Bamber filed an objection to this motion. For the following reasons, Conn-Selmer and Steinway's motion is **GRANTED.**

**I.   PROCEDURE**

On March 13, 2007, Conn-Selmer filed its complaint in this Court. On April 30, 2007, Bamber filed his answer. Bamber also filed a counterclaim against Conn-Selmer and a third party complaint against Steinway. Bamber alleges that Conn-Selmer and Steinway committed tortious interference with a pending contract between Dennis Bamber Inc. d/b/a The Woodwind and The Brasswind (Woodwind & Brasswind) and a non-party, Musician's Friend, Inc. d/b/a the Guitar Center (Guitar Center).

On July 6, 2007, Conn-Selmer and Steinway filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Bamber's counterclaim and third party claim for tortious interference. On July 24, 2007, Bamber filed a response in opposition to this motion, and on August 17, 2007, Conn-Selmer and Steinway filed their reply in support of their motion to dismiss.

On January 14, 2008, this Court held a Fed. R. Civ. P. 16(b) conference in which the parties also consented pursuant to 28 U.S.C. § 636(c).  The Court now enters is ruling on the pending motion to dismiss.

## II.   ANALYSIS

### A.   Facts

Woodwind & Brasswind is a company that generally buys and sells musical instruments. Conn-Selmer is a company that manufactures musical instruments.  Woodwind & Brasswind was engaged in a business relationship with Conn-Selmer in which Woodwind & Brasswind purchased musical instruments from Conn-Selmer and sold those instruments to the general public.

Woodwind & Brasswind had leased the properties from which it conducted its business. The landlord for those properties is Bamber LLC.  Dennis Bamber, the Defendant in this lawsuit, is the sole shareholder of Woodwind & Brasswind, and also has an unknown interest in Bamber LLC.

On November 21, 2006, Woodwind & Brasswind filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana.  At this point, Woodwind & Brasswind's suppliers, including Conn-Selmer, became Woodwind & Brasswind's creditors.

During the bankruptcy proceedings, Guitar Center made a proposal to Woodwind & Brasswind.  Guitar Center proposed that they become the new tenant of the Bamber LLC properties, the leases would be revised, and Guitar Center would pay Woodwind & Brasswind a sum of money in exchange for the deal.  This transaction, or the "Guitar Center contract," had to

be approved by the bankruptcy court under 11 U.S.C. § 363(b), which indicates that a bankruptcy court must approve any contract not done in the ordinary course of business.

Before the bankruptcy court approved the Guitar Center contract, Conn-Selmer and Steinway, a subsidiary of Conn-Selmer, filed an objection to the Guitar Center contract. Steinway also submitted a new contract ( the "Steinway contract") that was substantially similar to the Guitar Center contract.  However, the Steinway contract had more financial advantages for Woodwind & Brasswind than the Guitar Center contract.

On December 21, 2006, the bankruptcy court approved the Steinway contract rather than the Guitar Center contract because it was the most fiscally sound deal for Woodwind & Brasswind.  The Guitar Center contract never reached fruition.  However, on January 15, 2007, Steinway terminated the Steinway contract even though it had been approved by the bankruptcy court prior to the scheduled asset sale that was to take place on January 24, 2007.

On January 23, 2007, Guitar Center made a new offer to Woodwind & Brasswind .  The terms of this new contract were not as favorable as the first contract between Woodwind & Brasswind and Guitar Center.  This new contract, though, was approved by the bankruptcy court on January 30, 2007, and is the contract Woodwind & Brasswind eventually took.

Bamber claims that Conn-Selmer's and Steinway's contract was tortious interference with contract.  Specifically, Bamber argues that Conn-Selmer and Steinway objected to the contract and offered the Steinway contact to the bankruptcy court specifically to prevent the bankruptcy court from approving the contract.  The issue this Court must resolve is whether the first contract between Woodwind & Brasswind and Guitar Center was an enforceable contract even though the contract had not been approved by the bankruptcy court.

  B. Fed. R. Civ. P. 12(b) Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate if the complaint sets forth no viable cause of action upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Challenger v. Ironworkers Local No. 1, 619 F.2d 645, 649 (7th Cir. 1980). In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them as true. Jackson v. E.J. Brach Corp., 176 F.3d 971, 977 (7th Cir. 1999). A party's claims are subject to dismissal only if it is clear that he can prove no set of facts consistent with the allegations in the complaint that would entitle him to relief. Scott v. City of Chi., 195 F.3d 950, 951 (7th Cir. 1999). The Court is not required to accept a party's legal conclusions. Fries v. Helsper, 146 F.3d 452, 456 (7th Cir. 1998), cert. denied 525 U.S. 930 (1998).

  C. Conn-Selmer and Steinway's Motion to Dismiss

To establish tortious interference with a contract in Indiana, 1) there must be a valid and enforceable contract, 2) the alleged tortfeasor must have knowledge of that contract, 3) the alleged tortfeasor must intentionally induce a breach 4) with absence of justification, and 5) damages result from the conduct. Nat'l City Bank, Ind. v. Shortridge, 689 N.E.2d 1248, 1252 (Ind. 1997).

As a threshold issue, there must be a valid and enforceable contract for a claim of tortious interference with a contract to survive. The existence of a valid, enforceable contract is a question of law. Mueller v. Karns, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007); Brant Cosnt. Co. v Lumen Const. Co., 515 N.E.2d 868, 871 (Ind. Ct. App. 3d Dist. 1987).

Woodwind & Brasswind and Guitar Center had essentially agreed upon terms for the re-assignment of a lease.  Guitar Center offered to take Woodwind & Brasswind's tenancy position for a price.  Thus, there was an offer, acceptance, and consideration, or in other words, a contract between Woodwind & Brasswind and Guitar Center.  However, that does not necessarily mean that the two had an enforceable contract to maintain a cause of action for tortious interference with a contract.

The parties do not dispute that the contract between Woodwind & Brasswind and Guitar Center was not in the ordinary course of business for Woodwind & Brasswind.  As a result, the bankruptcy court had approve to approve the contract made by the debtor, Woodwind & Brasswind, because the contract was outside of the ordinary course of business.  See 11 U.S.C. § 363(b)(1); In re UAL Corp., 443 F.3d at 568 (7th Cir. 2006).  The parties, though, dispute the effect the requirement of the bankruptcy court approval had upon the contract.  Conn-Selmer and Steinway argue that the Guitar Center contract was void and unenforceable absent approval from the bankruptcy court.  Bamber argues that the Guitar Center contract was voidable by the bankruptcy court.

A void contract is of no legal effect so that there is no contract at all, while a voidable contract is a contract that can be affirmed or rejected at the option of one of the parties.  See Marathon Oil Co. v. Collins, 744 N.E.2d 474, 478 n. 3 (Ind. Ct. App. 2001); Ind. Ins. Co. v. Margotte, 718 N.E.2d 1226, 1229 (Ind. Ct. App. 1999).  In situations where the parties have a voidable contract, Indiana courts have found that a party can maintain an action for tortious interference with a contract claim against a third party that interferes with a contract between two other parties.  See e.g., Eden United, Inc. v. Short, 573 N.E.2d 920, 925 (Ind. Ct. App.

5

1991). Meanwhile, a contract that is void, or unenforceable, cannot maintain an action for tortious interference with a contract. Nat'l City Bank, Ind., 689 N.E.2d at 1252 (indicating that contract must be enforceable); see e.g. GDC Envtl. Serv.s, Inc. v. Ransbottom Landfill, 740 N.E.2d 1254, 159 (Ind. Ct. App. 2000) (using the terms "void" and "unenforceable" in conjunction and interchangeably). Thus, the distinction of whether the Guitar Center contract was void or voidable is critical. This Court is not aware of any authority in Indiana that addresses whether a contract that must be approved by a court is considered voidable or whether it is void. Although not cited by either party, this Court is aware of a similar situation in Rockwell v. MSD Southwest Allen County, 737 N.E.2d 829 (Ind. Ct. App. 2000).

In Rockwell a school corporation manager offered the plaintiff a position of employment. However, Ind. Code § 20-5-3-8 provided that the board of the school corporation had to approve the contract or ratify the contract. The board never approved or ratified plaintiff's contract. When the plaintiff filed a cause of action based on a theory of breach of contract, the main issue was whether the plaintiff had a valid and enforceable contract even though the board never approved or ratified it. The Rockwell court found that the

> contract is unenforceable . . . under Indiana law because the business manager did not have statutory authority to bind [the school] to an employment contract and because . . . [the] contract was never ratified by a majority of the members of the [board] pursuant to Ind. Code § 20-5-3-8.

Id. at 834.

Although the Rockwell court dealt with a required approval from a school board and the present case required approval of a contract from the bankruptcy court, the analysis from Rockwell is applicable to this case. The fact that Woodwind & Brasswind was a Chapter 11 bankruptcy debtor when he entered into the contract is significant. When a party avails itself of

the bankruptcy procedures for financial protection as a debtor, certain rights that party has in disposing of, or even handling, its property are altered to protect the creditor's interests in obtaining maximum value for that property. See In re UAL Corp., 443 F.3d 565, 571 (7thCir. 2006) ("The reason for . . . judicial approval . . . is that contracts made by a debtor in bankruptcy . . . may have an impact on the other creditors."). While a debtor generally has the ability to contract with whatever party however he desires, this axiom no long applies when a debtor has sought bankruptcy protection. When party files for Chapter 11 bankruptcy, by operation of federal law a bankruptcy court must approve any contract made by the debtor that is outside of the ordinary course of business. 11 U.S.C. § 363(b)(1); In re UAL Corp., 443 F.3d at 568 (7th Cir. 2006). Hence, when Woodwind & Brasswind availed itself of bankruptcy protection, it forfeited any authority to enter into a "binding" contract with another party that was not in the ordinary course of business without approval from the bankruptcy court just as the school manager in Rockwell did not have authority under state law to create a "binding" contract without approval from the school board. Simply put, in Indiana when a contract must be approved as an operation of law by another entity, the contract is unenforceable until that approval occurs. Rockwell, 737 N.E.2d at 834.

     A claim of tortious interference with a contract requires there to be an "enforceable" as well as valid contract. Bamber admits in his pleading that the bankruptcy court never approved the contract between Woodwind & Brasswind and Guitar Center. Furthermore, the bankruptcy docket does not indicate such an approval.[1] Thus, Bamber cannot establish that the bankruptcy

---

[1] This Court may take judicial notice of matters that are public record, like the docket from the bankruptcy proceedings, without converting the Fed. R. Civ. P. 12(b)(6) motion into a motion for summary judgment. Palay v. United States, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

court ever approved the Woodwind & Brasswind and Guitar Center contract. Because the bankruptcy court had not approved the Woodwind & Brasswind and Guitar Center contract, it was not enforceable, and Bamber cannot sustain a claim for tortious interference of the contract. Conn-Selmer and Steinway's motion to dismiss is **GRANTED**.

### III.    ANCILLARY MATTERS

Bamber in his response claims that he should be allowed to amend his complaint if the motion to dismiss is granted. Conn-Selmer and Steinway object to this request in their reply. The proper way to seek relief to amend a pleading under Fed. R. Civ. P. 15 is by a separate motion. Consequently, this Court will not entertain Bamber's request for relief to amend contained in a response to another motion. If Bamber desires to amend its pleadings, he should file a separate motion.

### IV.    CONCLUSION

For the reasons stated, Woodwind & Brasswind never had an enforceable contract with Guitar Center, and as a result there is not enforceable contract that is a basis for a claim of tortious interference with a contact. Conn-Selmer and Steinway's motion to dismiss is **GRANTED** [Doc. No. 17].

**SO ORDERED.**

Dated this 7th Day of February, 2008.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge