UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CONN-SELMER INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:07-CV-100 CAN |
| | ) |
| DENNIS BAMBER, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On November 9, 2007, Plaintiff, Conn-Selmer Inc. ("Conn-Selmer") filed a motion for summary judgment. On January 14, 2008, upon the consent of the parties, this case was reassigned to the undersigned for all purposes. Pursuant to a scheduling order issued on the same day, Defendant, Dennis Bamber ("Bamber"), was given until May 1, 2008, to file a response in opposition. On May 1, 2008, Defendant, Dennis Bamber ("Bamber"), filed a response. On June 16, 2008, Conn-Selmer filed a reply. Additionally, on June 16, 2008, Conn-Selmer filed a motion to strike portions of Bamber's supporting affidavit. On July 16, 2008, Bamber filed a response to Conn-Selmer's reply. This Court may now enter its ruling on all pending matters pursuant to the parties' consent and 28 U.S.C. § 636(c).

**I.  FACTS**

On July 29, 1992, Defendant, Woodwind & Brasswind ("Woodwind"), executed and delivered a security agreement to Selmer Company pursuant to which Selmer Company agreed to provide credit to Woodwind. See Doc. No. 32-3. On the same day, Bamber executed a personal guaranty in favor of the Selmer Company to cover repayment of credit under the security agreement. See Doc. No. 32-4. Bamber guaranteed that Woodwind's present and future

liabilities would be paid when due, including accrued interest, attorneys' fees and costs. Id. Further, the security agreement states, in part, "[t]his guaranty shall, without further consent of or notice to the undersigned, pass to, and may be relied upon and enforced by any successor or assignee of [the Selmer Company] and any transferee or subsequent holder of any said indebtedness, liability or obligation." Id.

Following execution of the security agreement and guaranty, Selmer Company underwent several changes in ownership. See Doc. No. 61 at 4-5; see also Doc. No. 67 at 2-5. On November 21, 2006, Woodwind filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana. See Doc. No. 32-2 at 4. On February 14, 2007, Conn-Selmer issued a demand letter to Bamber for payment under the guaranty. See Doc. No. 32-2 and Doc. No. 32-6. When Bamber failed to pay, Conn-Selmer instituted this lawsuit.

**II.    ANALYSIS**

Conn-Selmer argues that liability was triggered against Bamber, according to the clear language of the security agreement and corresponding guaranty. See Doc. No. 32-3 at 3 ("Any of the following shall constitute 'default' under this Agreement: (a) Any breach or failure of DEBTOR to observe or perform any of its obligations . . . (b) [] if a petition in Bankruptcy is filed by or against DEBTOR . . . (d) Any failure of DEBTOR to satisfy indebtedness or liabilities." As such, Conn-Selmer asserts that it is entitled to over $3.5 million in unpaid principal, interest, and attorneys' fees. Starks Mech., Inc. v. New Albany-Floyd County Consol. Sch. Corp., 854 N.E.2d 936, 941 (Ind. Ct. App. 2006) ("When the terms of a contract are clear and unambiguous, those terms are conclusive and courts will simply apply the contract provisions rather than construing the contract or examining extrinsic evidence.").

Bamber does not dispute that he executed a personal guaranty on behalf of the Selmer Company. Bamber also does not dispute the express terms and conditions of the guaranty. Instead, Bamber argues that Conn-Selmer has failed to establish that it is a successor in interest to the guarantee he made with the Selmer Company. As such, Bamber maintains that Conn-Selmer is not the real party in interest on the guaranty. Further, in regards to liability, Bamber contends that the liabilities under the security agreement had changed over time, relieving Bamber of liability under the guaranty.

A.   Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

B.  Successor in Interest

Conn-Selmer maintains that it is the successor in interest to the Selmer Company. In support, Conn-Selmer submits paperwork memorializing the formal adoption of a corporate name change from "The Selmer Company, Inc." to "Conn-Selmer Inc." by the board of directors, along with the formal recognition of the change by Delaware's Secretary of State. See Doc. No. 32-5. In addition, Conn-Selmer presents a thorough history of the successive ownership of The Selmer Company. See Doc. No. 67 at 2-5; see also Doc. No. 67-2. Finally, Conn-Selmer states that it extended additional credit to Woodwind under the original security agreement, further substantiating that it acted as the successor in interest to the guaranty. In verification of this assertion, Conn-Selmer submits an affidavit of its Chief Financial Officer, Judy A. Schuchart ("Schuchart"), regarding the same. See Doc. No. 32-2 at 4.

Bamber's response is narrowly focused on the chain of successive owners of the Selmer Company and includes an analysis of the Company's history that extends several years before the security agreement and guaranty were even created. In effect, Bamber argues that Conn-Selmer has failed to show exactly how "The Selmer Company" with whom he executed the guaranty became "The Selmer Company Inc," the immediate predecessor in interest to Conn-Selmer Inc. In addition, Bamber attempts to point out "holes" in the historical chain of ownership, offering circumstantial evidence to argue that Conn-Selmer's history is incomplete

and incredulous, and thereby insufficient to establish successorship in liability.[1] As such, Bamber argues that such failure prevents Conn-Selmer from enforcing the guarantee. However, Bamber does not establish a credible alternative history to explain which company became the "actual" successor of interest of the Selmer Company or where, exactly, the chain of liability under the guaranty was severed. His argument is historically weak and legally insufficient.

Regardless, Bamber's own historical explanations undercut his argument. The express language of the security agreement and guaranty articulate a contractual obligation between Bamber and "The Selmer Company," beginning in 1992. See Doc. No. 32-3 and Doc. No, 32-4. According to Bamber's proposed history, the Selmer Company ceased to exist under that name in 1987, almost five years prior to the signed guaranty. See Bamber's Response, Doc. No. 61 at 4-5.[2] As such, the logical conclusion of Bamber's argument is that Bamber either executed the guaranty with a non-existent company or one that is wholly separate from Conn-Selmer's proposed historical chain. If either were the case, Bamber could have easily established the veracity of his argument by identifying the corporation that was actually extending him credit under the security agreement or show that no credit was ever extended under the agreement. Bamber did neither. Bamber's arguments propose too much and certainly much more than this Court is willing to accept.

---

[1] Some of Bamber's circumstantial evidence is the subject of Conn-Selmer's motion to strike. In its motion, Conn-Selmer argues that information submitted by Bamber from internet sources contain inadmissible hearsay and should be stricken. However, even entertaining such evidence, Bamber still fails to establish a material fact as to successorship of liability on the guaranty. In particular, this Court notes the conflicting histories in Bamber's own responses regarding his business dealings with "The Selmer Company." See Doc. No. 69 at 7-8.

[2] Indeed, Conn-Selmer submitted a copy of the "Entity Details" for The Selmer Company, issued by the Delaware Secretary of State, which affirms that The Selmer Company ceased to exist in name following a merger in 1987. See Doc. No. 67-2.

In contrast, Conn-Selmer articulates the process in which "The Selmer Company" became "The Selmer Company Inc.," the immediate successor in interest to Conn-Selmer. See Doc. No. 67 at 1-5; see also Doc. No. 67-2. Further, Conn-Selmer explains, via the sworn affidavit of Conn-Selmer's Chief Financial Officer, that "the Selmer Company" was an assumed business name of "The Selmer Company, L.P.," which was used by all of its successor entities. See Doc. No. 67; see also Doc. No. 67-2 at 5.

Finally, in a slew of alternative arguments, articulated for the first time in his second response brief, Bamber additionally asserts that he did not assent to an assignment of the security agreement during the subsequent changes in ownership, that he believed he had been relieved of his obligations, and that there is insufficient evidence to establish that the security agreement passed with the changes in ownership.[3] However, Bamber offers no law or evidence in support of his assertions besides his own affidavit which recites the same. See Bamber's Affidavit, Doc. No. 69-3 at 4.

In contrast, Conn-Selmer points to Indiana law, the express terms of the documents, and the affidavits of its Chief Financial Officer in support of its argument that the benefits and obligations of the security agreement and guaranty passed to Conn-Selmer as a direct successor in interest. For instance, Conn-Selmer notes that, under Indiana law, title to all corporate property passes unimpaired to the surviving corporation of a merger. See I.C. § 23-1-40-6(a). Further, Indiana law states that "the surviving corporation has all liabilities of each corporation party to the merger." Id. In addition, the security agreement expressly states, "[t]his Agreement

---

[3] Bamber's arguments are made for the first time as part of his second response. While this Court afforded Bamber the opportunity to respond after Conn-Selmer's reply, this Court regards Bamber's expanded scope of defenses, articulated for the first time after Conn-Selmer's opportunities to respond had been exhausted, as suspect.

shall create a continuing security interest in the Collateral and shall . . . (iii) inure to the benefit of SECURED PARTY and its successors, transferees and assigns." See Doc. No. 32-3 at 5. See Doc. No. 67 at 3; see also Doc. No. 67-2. Similarly, the guaranty states, "[t]his Guaranty shall, without further consent of or notice to the undersigned, pass to, and may be relied upon and enforced by any successor or assignee of SECURED PARTY". See Doc. No. 32-4 at 1 (emphasis in original).

This is strong and persuasive evidence that Conn-Selmer was the legitimate successor in interest to the Security Agreement and guaranty, and no reasonable jury could find otherwise. All said, this Court finds that Bamber has not submitted sufficient evidence for a reasonable jury to conclude that Conn-Selmer was not the successor in interest to the security agreement and guaranty, validly executed between Bamber and The Selmer Company.

C.      Modification and Release of Liability

Bamber additionally argues that changes were made to the terms of the security agreement, which were substantial enough to relieve Bamber of liability under the guaranty.[4] See Bamber's Affidavit, Doc. No. 69-3. "It is a general rule that when the principal and obligee cause a material alteration of the underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability." Cunningham v. Mid State Bank, 544 N.E.2d 530, 534 (Ind. Ct. App. 1989). "A material alteration which will effect a discharge of the guarantor must be a change which alters the legal identity of the principal's contract, substantially

---

[4] Similar to Bamber's alternative arguments regarding successorship under the guaranty, Bamber's argument that the terms of the contract were materially changed, sufficient to relieve him of liability, is made for the first time as part of his second response. As such, this Court regards this last-minute attempt to expand the scope of defenses as suspect.

increases the risk of loss to the guarantor, or places the guarantor in a different position." Id. (citing 72 C.J.S. Principal and Surety § 102(d) (1987)).

In support, Bamber offers documentation of a few communications made between Bamber and the various successors of the Selmer Company memorializing agreed changes to the credit repayment rates and deadlines. See Doc. No. 69-3 at 12-22. However, three of these documents addressed Dennis Bamber personally, and one was drafted by Dennis Bamber himself. Further, each appears, in substance, to confirm agreements made between the Selmer Company and Dennis Bamber, on behalf of Woodwind. As such, Bamber cannot argue that he was not privy to any changes made to the underlying security agreement. Indeed, these documents attest that Bamber was simultaneously fulfilling both roles as "obligee" on the debt, in his professional role as head of Woodwind, and as "guarantor" under the ongoing security agreement. Id. Consequently, Bamber cannot, and indeed does not, argue that he did not consent to any asserted changes made to security agreement. Because lack of consent is a necessary element to relieve Bamber of liability under the personal guaranty, this Court concludes that Bamber has not provided sufficient evidence to establish release from liability under the guaranty. Cunningham, 544 N.E.2d at 534. See also Reeder v. Ramsey, 458 N.E.2d 682, 684-85 (Ind. Ct. App. 1984); Goeke v. Merchants Nat'l Bank and Trust Co., 467 N.E.2d 760, 766-67 (Ind. Ct. App. 1984).

## IV. CONCLUSION

For the aforementioned reasons, this Court concludes that Bamber has failed to provide sufficient evidence to support either of his arguments for avoiding liability to Conn-Selmer on his personal guaranty. Accordingly, Conn-Selmer's motion for summary judgment is

**GRANTED**. [Doc. No. 32]. In addition, Conn-Selmer's motion to strike is **DENIED AS MOOT**. [Doc. No. 68].

However, having now found Bamber liable on his personal guaranty, there is still the question of the amount he owes Conn-Selmer. Consequently, Conn-Selmer is now **ORDERED** to submit an affidavit regarding contractual damages and affidavit of attorney's fees, incurred under the security agreement and personal guaranty, by **January 15, 2009**. Bamber will then have until **February 15, 2009** to file any objections and documentation in support.

**SO ORDERED.**

Dated this 10th Day of December, 2008.

<u>S/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge